# EXHIBIT 2

SUPREME COURT FOR THE STATE OF NEW YORK
COUNTY OF NEW YORK

JILL STUART (ASIA) LLC

    *Plaintiff,*

    -*against*-

SANEI INTERNATIONAL CO., LTD. AND
SANEI INTERNATIONAL USA, LLC

    *Defendants.*

Index No:

**COMPLAINT**

Plaintiff, by its undersigned attorneys, complaining of the Defendants, alleges, upon information and belief, as follows:

### THE PARTIES INVOLVED IN THIS SUIT

1. Jill Stuart (Asia) LLC ("JS Asia") is a limited liability company with a principal place of business at 550 Seventh Ave, 24th Floor, New York, NY 10018.

2. Defendant Sanei International Co. Ltd. ("Sanei Asia") is believed to be part of a publicly traded Japanese company with a principal place of business at 1-2-5 Shibuya-Ku, Tokyo, Japan, and maintains an office at 1071 Avenue of the Americas # 301, New York, New York 10018.

3. Defendant, Sanei International USA LLC ("Sanei USA"), is a limited liability company with a principal place of business at 1071 Avenue of the Americas # 301, New York, New York 10018.

1

## JURISDICTION AND VENUE

4. This court has both personal and subject matter jurisdiction in this suit as JS Asia and Sanei Asia have agreed to litigate all claims relating to this agreement in the city of New York. Further, both JS Asia and Sanei USA have principal places of business in Manhattan.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Background Information On Jill Stuart

5. Jill Stuart ("Stuart") is an actual person who has worked tirelessly to achieve her professional status. Over the course of her career, she has established herself as one of the most internationally recognized American designers. She is an innovator and fashion legend who has left an indelible mark on the world of fashion. One of her first forays into the world of fashion occurred when she was in high school, selling a collection of accessories to Bloomingdales. After graduation from high school, Stuart attended the Rhode Island School of Design. Thereafter, Stuart established her own successful boutique on the Upper East Side in 1988 and subsequently created her eponymous brand in 1993. Since 1993, the Jill Stuart brand's reputation and distinctive image have been consistently developed and promoted across a national and international stage.

### The History of the Marks

6. JS Asia and the Stuart-Curtis Family Trust (the "JS Trust") (collectively, the "JS Parties") have the exclusive right to numerous marks associated with the Jill Stuart brand, such as "Jill Stuart" and "Jill by Jill Stuart." These "JS Marks" include, but are not limited to, the following trademarks filed with the United States Patent and Trademark Office:

| Serial Number | Reg. Number | Word Mark |
|---|---|---|
| 78977828 | 3396562 | JILL STUART |
| 77332120 | 4091237 | JILL JILL STUART |
| 77332111 | 3785250 | JILL JILL STUART |
| 77135431 | 3347667 | JILL STUART |
| 76125593 | 2805256 | JILL STUART |
| 76090821 | 2808987 | JILL STUART |
| 74598027 | 1928255 | JILL STUART |

7.  The registrations are valid, subsisting, unrevoked and uncancelled. Additionally, many of these registrations are incontestable. The registration of the JS Marks constitutes *prima facie* evidence of their validity. Furthermore, many, if not all, of these marks have been registered in various countries throughout the world, including many in Asia.

8.  The JS Marks are world famous and widely recognized, and consumers have come to recognize the high quality of Jill Stuart branded-products (the "JS Products").

9.  However, another significant contributor to success in the fashion business concerns the ability of the designer to translate a certain unique image and taste level to the public to differentiate it from other brands.

10. In furtherance of this, millions of dollars in advertising and promotional activities have been spent promoting the JS Marks and JS Products based on this ideal over 15 years. This work was not done so that Sanei Asia could produce their own separate non-congruent brand image that would destroy all the JS Parties' efforts, particularly where Sanei Asia has fabricated a purported breach of the 2007 Services Agreement.

### JILL STUART'S SUCCESS IN ASIA

11. Many American designer brands have failed in Asia due to their inability to translate their image established here in the United States, to the type of image needed to be

successful in Asia. The Jill Stuart brand was able to transcend this barrier and has enjoyed enormous success in Asia as a result of the style, beauty and personality of the brand. This has made the Jill Stuart brand one of the most successful American designer brands in Asia, in part due to the assistance of the Defendants herein.

### THE AGREEMENTS WITH SANEI ASIA AND SANEI USA'S KNOWLEDGE

12. While the JS Parties' agreements are with Sanei Asia, these agreements have typically been negotiated through representatives of Sanei USA, namely Aaron Nir ("Nir"). However, the 2007 Services Agreement was negotiated through a different individual from Sanei Asia.

13. After participating in a series of agreements beginning in 2002, the JS Parties ultimately assigned Sanei Asia rights in certain of the JS Marks for women's apparel and accessories in the following classes and products (i) Class 25 (clothing); (ii) Class 14 (certain jewelry, but by agreement excludes, among other things, watch pieces and timepieces); and (iii) Class 18 (certain leather goods, namely purses, but not cosmetic bags) for the following countries: Japan, China, Hong Kong, Taiwan, Malaysia, Thailand, Singapore, Philippines, Indonesia, Vietnam, Laos, Myanmar and any other Asian country located between 90 degrees east longitude and 140 degrees east longitude, *excluding India, North Korea, South Korea, Mongolia, and any countries in the territory which were part of the former U.S.S.R.* (collectively, the "Sanei Asian Territories"). There were also other restrictions in these agreements such as an anti-copying provision.

14. Sanei USA and Nir are believed to have intimate knowledge of the negotiations and are believed to be fully aware of the various contract terms between the parties including the 2007 Services Agreement.

15. Specifically, Nir and Sanei USA have been witness to the fact that for many years, (i) Sanei Asia never received samples for styles it did not order; (ii) the samples Sanei Asia did receive "heretofore" were always based on a value of three times the line sheet price of a style; and (iii) the portion attributed to "Misc." represented, among other things, to the exorbitant development costs associated with the creation of a collection and maintenance of the Jill Stuart Brand and not the actual value of actually making samples represented by the relatively few styles Sanei Asia may order in any given season.

THE AGREEMENT AT ISSUE: THE 2007 SERVICES AGREEMENT

16. This dispute revolves around the obligations of the parties pursuant to their Amended and Restated Services Agreement ("2007 Services Agreement"). In consideration of the services to be provided by JS Asia, the 2007 Services Agreement provides that Sanei Asia shall pay an annual fee on 13 April each year until the agreement expires on 12 April 2017. For the current year, Sanei paid $900,000. The parties further agreed that the $900,000.00 for this contract year was a guideline for the following "approximate" breakdown: Brand Consultation Services, $112,500.00; Fashion Show Expenses, $168,750.00; Advertising Production Services, $168,750.00; and Samples and Misc., $450,000. The 2007 Services Agreement, including the subject chart, was prepared and furnished by Sanei Asia with everyone agreeing that the breakdowns were simply how the parties were to apportion the amounts for the contract year not estimates of definitive costs.

17. Specifically at issue here, is the interpretation of §3(d) of the 2007 Services Agreement, which Sanei Asia drafted and provides:

> (d) Samples. JS Asia shall provide Sanei samples for its line of Collection Products, Second Line Products, and/or Children's Products in quantities comparable to that heretofore provided to Sanei, for each Fall season, Spring season, and Resort season. If JS Asia fails to provide the samples in quantities

5

comparable to that heretofore provided to Sanei, the Services Fee allocated to "Samples or Misc." under Section 2 above, shall be repaid by Sanei on a pro-rata basis.

### THE PARTIES' PRIOR COURSE OF DEALING

18. Given the manner in which this contract provision was drafted by Sanei Asia, the exact rights and obligations of the parties are not evident from this provision. To determine the rights of the parties thereunder, the Court must necessarily look beyond the four corners of the contract, as the provision specifically incorporates the parties' prior course of dealing as is evidenced by the use of "heretofore."

19. Pursuant to this provision, JS Asia is only required to provide samples in quantities comparable to those "heretofore" provided to Sanei Asia. This provision was not a new obligation in the parties' course of dealing. Rather, it mirrored what the parties had always done and was to ensure that the parties continued their prior practices.

20. Since the inception of the parties' relationship, typically a few days after each show, representatives from Sanei Asia and Sanei USA would come to the Jill Stuart showroom to review the entire Jill Stuart line, including the Runway Products and the Collection Products, to determine the orders they would subsequently place.

21. After the orders were subsequently placed by Sanei Asia and production commenced, samples of the styles Sanei Asia ordered were sent and the agreed upon value for such styles was three times the line sheet price. Again, if a style was not ordered by Sanei Asia, it did not receive a sample. This was the parties' agreement and how they always conducted business over many years.

SANEI ASIA'S IMPROPER ATTEMPT TO TERMINATE THE AGREEMENT

22. Presumably due to recent unrelated disputes between the parties, namely the Federal Litigation,[1] Sanei Asia did not place any orders with JS Asia, which it is entitled to do pursuant to the 2007 Services Agreement. In accordance with the parties' course of dealing and its contractual obligations, JS Asia did not forward any samples to Sanei Asia for any styles that were not ordered.

23. Sanei Asia then sent JS Asia a "Notice to Cure" claiming that this failure of the JS Asia to provide such samples, even where no styles were actually ordered, amounts to a material breach of the 2007 Services Agreement, thereby entitling Sanei Asia to terminate that Agreement unless such default is "cured." Sanei Asia claims that the entirety of the amount attributed to "Samples and Misc." for this contract year, namely $450,000.00, must be returned in order to "cure" the purported default, as Sanei Asia maintains it received no samples for the entirety of the current contract year.

24. These claims however are belied by certain invoices sent to Sanei Asia for samples for the Fall 2012 Season. Sanei Asia received these samples during this contract year. These invoices, which are dated this contract year and were shipped as late as June 2012, have an ascribed value for the samples of approximately $21,000.00 or approximately three times the line sheet price.

25. JS Asia maintains that it has fully complied with the 2007 Services Agreement, as JS Asia is not required to provide any samples where there are no orders.

26. Assuming *arguendo* that the Court believes that JS Asia was required to provide samples even where there were no orders by Sanei Asia (and thereby deviating from the prior

---

[1] Jill Stuart (Asia) LLC et al. v. Sanei International Co., Ltd. et al., United States District Court for the Southern District of New York, Case No. 12 Civ. 3699 (KBF) (SN)

course of dealing over the years), §3(d) of the 2007 Services Agreement sets forth the exclusive remedy to Sanei Asia in such event – the return of the fee attributed to "Samples and Misc" on a "pro-rata basis" for such samples that were not provided.

27. Historically, the only "pro rata basis" that has ever existed in the fifteen year course of dealing between the parties is the value of samples which are calculated at three times the line sheet costs.

28. Sanei Asia also neglects to factor in the amounts attributable to the "Misc" category. This category was meant to provide compensation for the numerous brand and goodwill building projects the JS Asia (and the other JS Parties) engage in throughout the world.

29. Sanei Asia is well aware that this section represented the exorbitant costs involved in among other things, developing runway and line samples, attending fabrics shows, developing shoes and accessories, hiring stylists and the Jill Stuart goodwill associated with these developments and maintaining the brand's unique character and global stature.

30. As such, Sanei Asia's assertions that it is entitled to the entire amount apportioned to the category "Samples and Misc." ignores the language of the parties' agreement, but also the parties' course of dealing which was specifically integrated therein. As such the Notice to Cure is improper and defective as a matter of law and should be accorded no force or effect, as the attempted termination of the 2007 Services Agreement is wholly without merit.

## FIRST CAUSE OF ACTION

(Declaratory Judgment Against Sanei Asia)

29. Plaintiff repeats and realleges each of the responses and allegations contained in the preceding paragraphs, as if fully set forth herein.

30. An actual and substantial controversy exists concerning Sanei Asia's attempt to terminate the 2007 Services Agreement.

31. As is more fully described elsewhere herein, Sanei Asia maintains that JS Asia is obligated to send Sanei Asia samples from each season, regardless of whether Sanei Asia has ordered any garments from JS Asia.

32. Sanei Asia further maintains that the failure of JS Asia to unconditionally provide such samples amounts to a material breach of the 2007 Services Agreement, thereby permitting Sanei Asia to terminate the 2007 Services Agreement.

33. JS Asia maintains that the provision at issue incorporates the parties' prior course of dealing concerning the provision of samples.

34. JS Asia further maintains that since the inception of the parties' relationship, typically a few days after each show, representatives from Sanei Asia and Sanei USA would come to the Jill Stuart showroom to review the entire Jill Stuart line, including the Runway Products and the Collection Products, to determine the orders it would subsequently place.

35. After the orders were subsequently placed by Sanei Asia and production commenced, samples of the styles Sanei Asia ordered were sent Sanei Asia at the agreed upon value for such styles was three times the line sheet price. If a style was not ordered by Sanei Asia—it did not receive a sample. This was the parties' agreement business was conducted over many years.

36. Sanei Asia only received samples for the styles it ordered from JS Asia. Therefore, it follows that if no styles were ordered, JS Asia was not obligated to provide any samples.

37. By reason of the foregoing, Plaintiff seeks declaratory judgment providing that (i) the attempted termination by Sanei Asia is improper; (ii) §3(d) of the 2007 Services Agreement only requires that JS Asia provide samples to Sanei Asia, when Sanei Asia places orders with JS Asia for a particular style; and (iii) in the event that Sanei Asia places an order for certain styles and JS Asia does not provide corresponding samples in the quantities comparable to that heretofore provided to Sanei Asia, then the exclusive remedy of Sanei Asia shall be to be repaid for such missing samples on a "pro-rata" basis with the value being calculated at three times the line sheet price for each particular sample not delivered, not a termination of the agreement.

## SECOND CAUSE OF ACTION

(Breach of Contract Against Sanei Asia)

38. Plaintiff repeats and realleges each of the responses and allegations contained in the preceding paragraphs, as if fully set forth herein.

39. The 2007 Services Agreement described herein between the parties represents a valid, binding, and legally enforceable contract.

40. Plaintiff has more than substantially performed all of its obligations pursuant to the contract.

41. Sanei Asia, without justification or excuse, failed and refused to perform their continuing obligations in breach of this agreement by, among other things, attempting to improperly terminate the 2007 Services Agreement.

42. By reason of the foregoing, Plaintiff has been damaged by Sanei Asia and is entitled to all remedies available at law, equity, or otherwise, including but not limited to (i) injunctive relief preventing the wrongful termination of the 2007 Services Agreement; (ii) compensatory damages in an amount to be determined at trial but reasonably believed to exceed

$3,900,000; (iii) applicable interest, costs, expenses and attorneys' fees, with all such amounts to be determined at trial; and (iii) such other and further relief as the court deems just and proper.

### THIRD CAUSE OF ACTION

### (Tortious Interference With Contract)

43.     Plaintiff repeats and realleges each of the responses and allegations contained in the preceding paragraphs, as if fully set forth herein.

44.     The 2007 Services Agreement by and between JS Asia and Sanei Asia is a valid, binding and enforceable agreement.

45.     Sanei USA was aware of the 2007 Services Agreement and the requirements contained therein.

46.     Sanei USA intentionally and maliciously induced Sanei Asia to wrongfully attempt to terminate the 2007 Services Agreement for the sole purpose of inflicting intentional harm on the Plaintiff.

47.     By reason of the foregoing, Plaintiff has been damaged by Sanei USA and is entitled to all remedies available at law, equity, or otherwise, including but not limited to (i) compensatory damages in an amount to be determined at trial but reasonably believed to exceed $3,900,000; (ii) applicable interest, costs, expenses and attorneys' fees, with all such amounts to be determined at trial; and (iii) such other and further relief as the court deems just and proper.

**WHEREFORE**, Plaintiff respectfully demands that Judgment be entered in its favor and against Defendants on each of its causes of action, together with costs and disbursements of this action, attorney fees, and any further relief the court deems just and proper.

Dated: New York, New York
      21 February 2013

BALLON STOLL BADER & NADLER, P.C.

By: _____
    Dwight Yellen
    *dyellen@ballonstoll.com*
    Michael J. Sheppeard
    *msheppeard@ballonstoll.com*
    729 Seventh Avenue - 17th Floor
    New York, New York 10019
    Tel. (212) 575-7900
    *Attorneys for Plaintiff*